## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

TEMPUR SEALY INTERNATIONAL, INC. and
MATTRESS FIRM GROUP, INC.,

        Plaintiffs,

    v.

THE FEDERAL TRADE COMMISSION, et al.,

        Defendants.

Civil Action No. 4:24-cv-3764

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants the Federal Trade Commission and Lina M. Khan, Rebecca Kelly Slaughter, Alvaro Bedoya, Melissa Holyoak, and Andrew N. Ferguson, in their official capacities as Commissioners of the Federal Trade Commission (collectively, "Defendants"), hereby oppose Plaintiffs Tempur Sealy's and Mattress Firm's Motion for Preliminary Injunction, ECF No. 33. For the reasons stated herein, Plaintiffs have not satisfied their burden to justify a preliminary injunction enjoining Defendants from continuing with the ongoing administrative proceeding against Plaintiffs before the Federal Trade Commission.

## TABLE OF CONTENTS

BACKGROUND...................................................................................................... 2

I.   THE FTC ACT AND THE CLAYTON ACT ......................................................... 2

II.  THE SECTION 13(b) PROCEEDING & ADMINISTRATIVE PROCEEDING ... 4

III. THIS LAWSUIT ................................................................................................. 6

STANDARD OF REVIEW ....................................................................................... 7

ARGUMENT ............................................................................................................. 7

I. PLAINTIFFS HAVE NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON

   THE MERITS. ....................................................................................................... 7

A.  The Commission's Authority to Adjudicate Actions to Block Mergers is

    Consistent with Article III Because Such Actions Are Public-Rights Matters. ...... 7

    i.   The Commission Adjudicates Public-Rights Matters Under the Clayton Act

         and FTC Act.................................................................................................... 8

    ii.  Jarkesy Provides No Support for Plaintiffs' Claim, as They Have Not Alleged

         a Seventh Amendment Violation, Nor Are the FTC Proceedings Akin to Any

         Traditional Legal Claim. ............................................................................... 10

B.  Plaintiffs' Non-Delegation Claim is Foreclosed by Binding Precedent. ............ 15

II. PLAINTIFFS ARE NOT IRREPARABLY HARMED BY BEING SUBJECT TO

   ADMINISTRATIVE PROCEEDING. .................................................................. 17

III. THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH

   AGAINST ENTRY OF A PRELIMINARY INJUNCTION. .................................. 18

CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

CASES

*Am. Airlines v. N. Am. Airlines, Inc.,*
  351 U.S. 79 (1956).................................................................................. 10

*AMG Cap. Mgmt., LLC v. FTC,*
  593 U.S. 67 (2021)............................................................................... 4, 15

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023)............................................................................. 2, 17

*Brown Shoe Co. v. United States,*
  370 U.S. 294 (1962)............................................................................. 9, 13

*Crowell v. Benson,*
  285 U.S. 22 (1932)............................................................................... 8, 9

*Dennis Melancon, Inc. v. City of New Orleans,*
  703 F.3d 262 (5th Cir. 2012)...................................................................... 7

*FTC v. Algoma Lumber Co.,*
  291 U.S. 67 (1934)................................................................................. 12

*FTC v. Colgate-Palmolive Co.,*
  380 U.S. 374 (1965)............................................................................... 12

*FTC v. Eastman Kodak Co.,*
  274 U.S. 619 (1927)................................................................................. 9

*FTC v. Procter & Gamble Co.,*
  386 U.S. 568 (1967)............................................................................... 12

*FTC v. R.F. Keppel & Bro.,*
  291 U.S. 304 (1934)............................................................................... 11

*FTC v. Raladam Co.,*
  283 U.S. 643 (1931)........................................................................... 11, 12

*FTC v. Sperry & Hutchinson Co.,*
  405 U.S. 233 (1972)............................................................................... 11

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980) ......................................................................... 17

*Humphrey's Ex'r v. United States*,
  295 U.S. 602 (1935) ......................................................................... 12

*Illumina v. FTC*,
  88 F.4th 1036 (5th Cir. 2023) .....................................................1, 15, 16

*In re Abbott*,
  117 F.4th 729 (5th Cir. 2024) ..................................................... 10, 13

*International Shoe Co. v. FTC*,
  280 U.S. 291 (1930) ...................................................................... 8, 9

*Jarkesy v. Sec. & Exch. Comm'n*,
  34 F.4th 446 (5th Cir. 2022) ............................................................ 16

*Ladd v. Livingston*,
  777 F.3d 286 (5th Cir. 2015) ............................................................. 7

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
  103 F.4th 748 (10th Cir. 2024) ......................................................... 17

*Maryland v. King*,
  567 U.S. 1301 (2012) ...................................................................... 18

*MCR Oil Tools, L.L.C. v. U.S. Dep't of Transp.*,
  No. 24-60230, 2024 WL 2954416 (5th Cir. June 12, 2024) ........................ 18

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
  59 U.S. 272 (1856) .......................................................................... 9

*Nat'l Harness Mfrs.' Ass'n v. FTC*,
  268 F. 705 (6th Cir. 1920) ................................................................. 9

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................... 7, 18

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  584 U.S. 325, (2018) ................................................................7, 8, 18

*Pan Am. World Airways, Inc. v. United States*,
   371 U.S. 296 (1963) ................................................................. 10

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
   415 U.S. 1 (1974) ..................................................................... 18

*Sec. & Exch. Comm'n v. Jarkesy*,
   144 S. Ct. 2117 (2024) ....................................................... *passim*

*Stern v. Marshall*,
   564 U.S. 462 (2011) ................................................................... 8

*The Case of the City of London* (Wagoner's Case), (1610)
   77 Eng. Rep. 658, 663 (K.B.) .................................................. 14

*Trottie v. Livingston*,
   766 F.3d 450 (5th Cir. 2014) ..................................................... 7

*Tull v. United States*,
   481 U.S. 412 (1987) ................................................................. 10

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ................................................................. 13

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ....................................................................... 7


**STATUTES**

5 U.S.C. § 554 ................................................................................ 3

5 U.S.C. § 554(d)(2) ....................................................................... 3

5 U.S.C. § 556 ................................................................................ 3

5 U.S.C. § 557 ................................................................................ 3

15 U.S.C. § 18 ........................................................................... 3, 18

15 U.S.C. § 21 ................................................................................ 4

15 U.S.C. § 21(b) ........................................................................... 3

iv

15 U.S.C. § 21(c) ............................................................................................. 3

15 U.S.C. § 21(*l*) ........................................................................................... 3

15 U.S.C. § 45(a) ........................................................................................... 18

15 U.S.C. § 45(b) ............................................................................................. 3

15 U.S.C. § 45(c) ...................................................................................... 3, 19

15 U.S.C. § 45(*l*) ........................................................................................... 3

15 U.S.C. § 53(b) ....................................................................................... 3, 9

15 U.S.C. § 57b ............................................................................................. 15

15 U.S.C. § 121 ............................................................................................... 4

Clayton Act, Pub. L. No. 63-212, 38 Stat. 730,
  codified as amended at 15 U.S.C. §§ 12–27 ..................................... 1, 2

FTC Act of 1914, Pub. L. No. 63-203, 38 Stat.717,
  codified as amended at 15U.S.C. §§ 41–58 ........................................... 2

## REGULATIONS

16 C.F.R. § 3.31 ............................................................................................. 3

16 C.F.R. § 3.42 ............................................................................................. 3

16 C.F.R. § 3.43 ............................................................................................. 3

16 C.F.R. § 3.51 ............................................................................................. 3

16 C.F.R. § 3.54 ............................................................................................. 3

16 C.F.R. § 4.7(b)(1) ...................................................................................... 3

## OTHER AUTHORITIES

S. Rep. No. 63-698 (1913) ..................................................................... 12, 13

Steven G. Calabresi & Larissa C. Leibowitz, *Monopolies and the Constitution: A History of Crony Capitalism*, 36 HARVARD J.L. & PUB. POL. 983, 984 (2013) ........................ 14

Thomas B. Nachbar, *Monopoly, Mercantilism, and the Politics of Regulation*, 91 VA. L. REV. 1313 (2005) ................................................................................................ 14, 15

Plaintiffs Tempur Sealy International, Inc. ("Tempur Sealy") and Mattress Firm Group, Inc. ("Mattress Firm") move belatedly for a preliminary injunction to prevent the Federal Trade Commission ("the Commission" or "FTC") from conducting an administrative proceeding to determine whether their proposed merger violates the Clayton Act. The Court should deny Plaintiffs' motion because they have not shown either a likelihood of success or imminent irreparable harm, and the balance of equities weighs against an injunction that would prevent enforcement of the antitrust laws.

Plaintiffs first allege that the Supreme Court's recent decision in *Securities and Exchange Commission v. Jarkesy*, 144 S. Ct. 2117 (2024), upends a century-old statutory scheme allowing the Commission to protect the public from harm to competition through administrative adjudication. Plaintiffs' argument that such administrative proceedings involve adjudication of private rights within the executive branch is contrary to Supreme Court precedent. The Supreme Court established long ago that Commission proceedings to enforce the Clayton Act, 15 U.S.C. §§ 12–27, involve public rights that may be adjudicated administratively. Moreover, both Acts created new causes of action that did not derive from the common law. Thus, even if *Jarkesy* implicated Article III questions, Plaintiffs' Article III claim would still fail.

Plaintiffs next allege that Congress's decision to give the Commission a choice between bringing an administrative adjudication to enforce the Clayton Act or seeking a permanent injunction to halt a proposed merger in federal court violates the non-delegation doctrine. That claim is squarely foreclosed by binding precedent in *Illumina v. FTC*, 88 F.4th 1036, 1046 (5th Cir. 2023), where the Fifth Circuit rejected an identical claim.

1

This Court should deny Plaintiffs' motion for a preliminary injunction for the additional, independent reason that they have not shown they will suffer irreparable harm absent an injunction. The Supreme Court has determined that the costs of participating in administrative proceedings alone do not constitute irreparable injury. Additionally, Plaintiffs' assertion of irreparable harm based on the burden of being subject to further administrative proceedings is premised on a misreading of *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023).

Finally, the balance of the equities weighs against relief here given the public's substantial interest in enforcement of the nation's antitrust laws. Plaintiffs' motion for preliminary injunction should be denied.

## BACKGROUND

## I.   THE FTC ACT AND THE CLAYTON ACT

Congress established the Commission in 1914 as a bipartisan expert agency composed of five Commissioners. *See* FTC Act of 1914, Pub. L. No. 63-203, 38 Stat. 717, codified as amended at 15 U.S.C. §§ 41–58 ("FTC Act"). Since the statute was enacted, the Commission's mandate has included a Congressional directive to prevent "unfair methods of competition" through administrative adjudication. *Id.* § 45(a)(2), (b) ("Section 5"). A few weeks after passing the FTC Act, Congress enacted the Clayton Act, which prohibited certain anticompetitive practices. *See* Clayton Act, Pub. L. No. 63-212, 38 Stat. 730, codified as amended at 15 U.S.C. §§ 12–27. Relevant here, Section 7 of the Clayton Act bars transactions the effect of which "may be substantially to lessen competition, or

tend to create a monopoly." 15 U.S.C. § 18. Congress directed the Commission to enforce this prohibition through administrative adjudication as well.

The Commission has conducted administrative proceedings under the Clayton Act and the FTC Act since those statutes were enacted 110 years ago. The administrative processes set out in the two statutes are substantively identical. Under both statutes, the Commission issues a complaint and conducts a hearing, following which it may issue a cease-and-desist order, *see id.* §§ 21(b), 45(b), which is subject to judicial review in the courts of appeals, *see id*. §§ 21(c), 45(c). Violators of the Commission's orders can be subject to monetary penalties, among other remedies. *Id.* §§ 21(*l*), 45(*l*).

Since 1946, the Commission has conducted administrative hearings in accordance with the Administrative Procedure Act ("APA"). *See* 5 U.S.C. §§ 554, 556–57. Generally, under the Commission's current rules, an ALJ conducts an initial hearing and issues a recommended decision, *see* 16 C.F.R. §§ 3.42, 3.51, which the Commission may then adopt, modify, or set aside, *see id.* § 3.54. The parties have discovery and trial rights comparable to those in federal court. *See, e.g.*, *id.* §§ 3.31, 3.43. The Commission's staff who prosecute the complaint, known as "complaint counsel," are walled off from the Commission decisionmakers once a complaint is issued, as required by the APA and Commission regulations. *See* 5 U.S.C. § 554(d)(2); 16 C.F.R. § 4.7(b)(1).

In 1973, Congress enacted Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), which authorized the Commission to sue in federal court to enforce the laws under its purview. Section 13(b) authorizes the Commission to seek a preliminary injunction pending its decision in an administrative proceeding. *See id*. The Commission regularly uses this

3

authority to seek preliminary injunctions to prevent parties from consummating proposed mergers until resolution of the administrative proceeding, as the Commission did in this case. Section 13(b) further provides that, "in proper cases the Commission may seek . . . a permanent injunction." *Id.* Section 13(b) does not permit the Commission to seek any monetary relief. *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 70 (2021).

## II.   THE   SECTION   13(b)   PROCEEDING   AND   ADMINISTRATIVE PROCEEDING

Tempur Sealy is the world's largest mattress manufacturer and supplier, and Mattress Firm is the nation's largest mattress retailer by revenue. *See* Compl. ¶ 1, *In Re Tempur Sealy Int'l Inc.*, FTC Dkt. No. 8433, https://perma.cc/EP9G-Q38W ("Admin. Compl."). In May 2024, Tempur Sealy and Mattress Firm agreed on a proposed merger whereby Tempur Sealy would acquire Mattress Firm for approximately $4 billion. *Id.* ¶ 20. On July 2, 2024, the Commission initiated an administrative proceeding to assess whether the merger may substantially lessen competition or tend to create a monopoly and thereby violate Section 7 of the Clayton Act, 15 U.S.C. § 21, and Section 5 of the FTC Act, 15 U.S.C. § 121. *See* Admin. Compl. ¶ 121.[1] The administrative complaint provided notice that an evidentiary hearing would commence on December 4, 2024. *See Id.* at 45.

At the same time, the Commission also brought suit in this Court ("Section 13(b) proceeding"), seeking a preliminary injunction under Section 13(b) of the FTC Act to enjoin the merger pending resolution of the administrative proceeding. *See* Compl. for

---

[1]   The full docket for the administrative proceeding is available online at: https://www.ftc.gov/legal-library/browse/cases-proceedings/231-0016-tempur-sealy-international-inc-mattress-firm-group-inc-matter.

TRO & Inj. Relief (Redacted), *FTC v. Tempur Sealy, Int'l Inc., et al.*, No. 4:24-cv-02508 (S.D. Tex.), ECF No. 1 ("Section 13(b) Complaint"). The parties to the Section 13(b) proceeding stipulated to a temporary restraining order in which Tempur Sealy and Mattress Firm agreed not to consummate the proposed merger until after the expected date by which this Court will rule on the preliminary injunction. *See* TRO at 2, *FTC v. Tempur Sealy, Int'l Inc., et al.*, No. 4:24-cv-02508 (S.D. Tex.), ECF No. 42.

In the administrative proceeding, an ALJ was assigned to the case. Tempur Sealy and Mattress Firm each filed their respective answers to the administrative complaint on July 9, 2024. On July 19, 2024, the ALJ issued a scheduling order setting deadlines leading up to the December 4, 2024 evidentiary hearing. *See* Scheduling Order, *In Re Tempur Sealy Int'l Inc.*, FTC Dkt. No. 8433, https://perma.cc/R6B4-BTCB. On October 3, 2024, Tempur Sealy and Mattress Firm filed an unopposed motion asking the Commission to continue the evidentiary hearing until February 9, 2025, so that this court would have time to decide the Commission's "requested preliminary injunction before the administrative hearing is set to begin and reduce burdens on the parties, third parties, and counsel." Resp'ts' Corrected Mot. to Continue Evidentiary Hr'g, FTC Dkt. No. 8433, https://perma.cc/ZE4X-TVVE. Later, while the motion to continue was still pending, all parties to the administrative proceeding filed a joint expedited motion to suspend all scheduling order deadlines in that proceeding. Joint Expedited Mot. to Suspend Sched. Order Deadlines, FTC Dkt. No. 8433, https://perma.cc/K4QZ-P97Y. On November 7, 2024, both motions were granted. The Commission granted a continuance of the hearing in the administrative proceeding from December 4, 2024, to February 10, 2024. Order Granting Continuance of

Evidentiary Hr'g, FTC Dkt. No. 8433, https://perma.cc/2XUD-W7Y6. The ALJ further suspended pre-hearing deadlines and ordered the Parties to submit a joint status report within ten days after the completion of the preliminary injunction hearing in the Section 13(b) proceeding. Order Granting Joint Mot. to Suspend Deadlines, FTC Dkt. No. 8433, https://perma.cc/7WYP-88BM.

In the Section 13(b) proceeding, this Court held an evidentiary hearing between November 12 and 25, 2024. The Parties' post-hearing briefs are forthcoming, at which point the Commission's motion for preliminary injunction will be ripe for decision.

## III.    THIS LAWSUIT

Three months after the Commission initiated the administrative and Section 13(b) proceedings, and just five weeks before the scheduled evidentiary hearing in the Section 13(b) proceeding, Plaintiffs filed this suit, alleging structural constitutional violations in the administrative proceeding. Compl. for Decl. & Injunctive Relief, ECF No. 1. First, Plaintiffs allege that the Commission's authority to adjudicate mergers under the FTC Act and Clayton Act in administrative proceedings is at odds with Article III of the U.S. Constitution. *Id.* ¶¶ 47-52. Second, they allege that the FTC's ability to halt mergers through administrative adjudications or in an Article III court violates the non-delegation doctrine. *Id.* ¶¶ 53-58.

A full month after initiating the case, Plaintiffs filed a motion for preliminary injunction on November 5, 2024, seeking to enjoin the pending administrative proceeding. Pls. Tempur Sealy's & Mattress Firm's Mot. for Prelim. Inj., ECF No. 33 ("Pls.' Mot.").

## STANDARD OF REVIEW

Preliminary injunctions should only issue if the movant shows: "(1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest." *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015) (quoting *Trottie v. Livingston*, 766 F.3d 450, 451 (5th Cir. 2014)). The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). A preliminary injunction "should not be granted unless the movant has clearly carried the burden of persuasion on all four requirements." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012) (citation omitted); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (requiring a "clear showing").

## ARGUMENT

### I.    PLAINTIFFS HAVE NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS.

#### A.   The Commission's Authority to Adjudicate Actions to Block Mergers is Consistent with Article III Because Such Actions Are Public-Rights Matters.

Plaintiffs cannot show a likelihood of success on the merits of their claim that the Commission proceeding to block the merger violates Article III because merger adjudications are historically public rights matters that may be assigned to administrative agencies. Congress has "significant latitude to assign adjudication of public rights to entities other than Article III courts." *Oil States Energy Servs., LLC v. Greene's Energy*

*Grp., LLC*, 584 U.S. 325, 334, (2018). "The public-rights doctrine applies to matters 'arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it.'" *Id.* at 334 (quoting *Crowell v. Benson*, 285 U.S. 22, 50 (1932)). While the Court "has not definitively explained the distinction between" private rights and public rights," a "hallmark" of a private-rights matter is whether "it is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789." *Jarkesy*, 144 S. Ct. at 2132 (cleaned up and citation omitted). On the other hand, public-rights matters include those that "historically could have been determined exclusively by [the executive and legislative] branches[.]" *Id.* (quoting *Stern v. Marshall*, 564 U.S. 462, 493 (2011)).

Under Congressional direction, the Commission has been adjudicating merger cases in administrative proceedings for 110 years. Supreme Court precedent confirms that these cases involve public rights that may properly be adjudicated by an agency, and nothing in *Jarkesy* upends that long-settled determination.

### i. The Commission Adjudicates Public-Rights Matters Under the Clayton Act and FTC Act.

Proceedings to block mergers under the Clayton Act and the FTC Act are paradigmatic examples of public-rights matters. In *Crowell*, the Court specifically pointed to a Clayton Act case involving the Commission as one of the "[f]amiliar illustrations of administrative agencies created for the determination of [public-rights] matters." 285 U.S. at 51. The Commission case that *Crowell* invoked, *International Shoe Co. v. FTC*, 280 U.S. 291, 297 (1930), explained that "Section 7 of the Clayton Act, as its terms and the nature

8

of the remedy prescribed plainly suggest, was intended for the protection of the public against the evils which were supposed to flow from the undue lessening of competition." *Id.* at 297–98. *Jarkesy* expressly cited to *Crowell*'s discussion of these "familiar" examples of public rights. 144 S. Ct. at 2133 (citing *Crowell*, 285 U.S. at 51).

The Supreme Court has also recognized that, in adjudicating Clayton Act and FTC Act actions, "[t]he Commission exercises only the administrative functions delegated to it by the [FTC] Act, not judicial powers." *FTC v. Eastman Kodak Co.*, 274 U.S. 619, 623 (1927) (citing *Nat'l Harness Mfrs.' Ass'n v. FTC*, 268 F. 705, 707 (6th Cir. 1920)). To be sure, more than half a century after the Commission began adjudicating the legality of mergers through its administrative process, Congress gave the Commission the authority under Section 13(b) to obtain permanent injunctions against unlawful conduct (including mergers that violate the Clayton Act) in Article III courts. 15 U.S.C. § 53(b). The public rights doctrine does, however, contemplate that public-rights matters can be "presented in such form that the judicial power is capable of acting on them." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856). Thus, the mere fact that Congress belatedly gave Article III courts limited jurisdiction to entertain these actions does not convert a historically public-rights matter into a private-rights one.

Proceedings under these statutes vindicate the interests of the general public rather than particularized interests of parties. The Supreme Court has consistently held that the Clayton Act is "concern[ed] with the protection of competition, not competitors[.]" *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) (emphasis added). The Clayton Act "seek[s] to protect the public from abuses arising in the course of competitive interstate

and foreign trade." *Pan Am. World Airways, Inc. v. United States*, 371 U.S. 296, 307 (1963) (citation omitted). It "do[es] not embrace a remedy for private wrongs but only a means of vindicating the public interest." *Id.* at 306. Similarly, the FTC Act is concerned "with protection of the public interest," not "punishment of wrongdoing or protection of injured competitors." *Am. Airlines v. N. Am. Airlines, Inc.*, 351 U.S. 79, 85–86 (1956).

### ii. *Jarkesy* Provides No Support for Plaintiffs' Claim, as They Have Not Alleged a Seventh Amendment Violation, Nor Are the FTC Proceedings Akin to Any Traditional Legal Claim.

Plaintiffs, relying on *Jarkesy*, argue that the Commission's action is a traditional legal claim to which the "public rights exception" does not apply. This reliance is misplaced. *Jarkesy* was a Seventh Amendment case; here, the claims do not implicate the right to a jury trial. *See, e.g.*, *Jarkesy*, 144 S. Ct. at 2139–40 (Gorsuch, J., concurring) ("The Court decides a single issue: Whether the Securities and Exchange Commission's use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial.").

In any event, the Commission's action is not a private-rights matter. Under *Jarkesy*, private-rights matters are legal claims that closely resemble a traditional action at common law. *Id.* at 2132. In making this determination, courts consider both the nature of the claim and the remedy. *Id.* at 2136–38; *see In re Abbott*, 117 F.4th 729, 734 (5th Cir. 2024) ("To determine whether a claim is legal in nature, courts 'must examine both the nature of the action and of the remedy sought.'" (quoting *Tull v. United States*, 481 U.S. 412, 417 (1987))). The Commission's action does not bear any resemblance to actions at common law. The FTC and Clayton Acts do not owe their origins to common law actions

10

challenging anticompetitive practices and neither target similar conduct or use similar language as common law actions. And the only remedy the Commission can issue in the administrative proceeding is a cease-and-desist order, an inherently equitable remedy akin to an injunction.

With the FTC Act, Congress chose to prohibit "unfair methods of competition" instead of merely prohibiting "unfair competition." An earlier version of the bill prohibited "'unfair competition' . . . which had a wellsettled meaning at common law." *FTC v. Raladam Co.*, 283 U.S. 643, 648 (1931). Congress changed the language to prohibit "unfair methods of competition," thereby broadening the category of conduct targeted by the statute beyond that proscribed by the common law. *Id.* As the Supreme Court observed, "[i]t would not have been a difficult feat of draftsmanship to have restricted the operation of the [FTC] Act to those methods of competition in interstate commerce which are forbidden at common law . . . , if that had been the purpose of the legislation." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 243 (1972) (quoting *FTC v. R.F. Keppel & Bro.*, 291 U.S. 304, 310 (1934)). But codifying the common law was not its purpose. Instead, Congress "explicitly considered, and rejected" the idea of "tying the concept of unfairness to a common-law or statutory standard." *Id.* at 240.

Thus, unlike the securities fraud statute in *Jarkesy*—which was "rooted in the common law" and "transplant[ed]" common-law terms, bringing the "old soil" with it, 144 S. Ct. at 2130–31—Congress in the FTC Act proscribed anticompetitive behavior, a category of conduct unknown to the common law, and Congress definitively chose not to transplant or incorporate common-law definitions of unfair competition. *See FTC v.*

11

*Raladam Co.*, 283 U.S. 643, 648 (1931) (explaining that Congress rejected the term "unfair competition . . . which had a well settled meaning at common law," in favor of "unfair methods of competition," which had an "[u]ndoubtedly . . . broader meaning").

By eschewing the common law standard, Congress "intended the agency to "develop[] innovative methods, techniques, and approaches for dealing with" the emergent problem of private monopolies. *Jarkesy*, 144 S. Ct. at 2137. So Congress chose to, "by a general declaration condemning unfair practices, leave it to the commission to determine what practices were unfair." *Id.* Congress thus created the Commission—"a body of experts" with "proper knowledge of both the public requirements and the practical affairs of industry," *Humphrey's Ex'r v. United States*, 295 U.S. 602, 624–25 (1935)—and gave it "an influential role in interpreting § 5 [of the FTC Act] and in applying it to the facts of particular cases arising out of unprecedented situations," *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385 (1965); *see also FTC v. Algoma Lumber Co.*, 291 U.S. 67, 78–81 (1934) (describing the Commission as the "champion at hand to put an end" to abuses "not actionable" at common law).

Just as the FTC Act was intended "to stop in their incipiency those methods of competition which fall within the meaning of the word 'unfair,'" *Raladam Co.*, 283 U.S. at 647, so too was the Clayton Act intended "to arrest the creation of trusts, conspiracies, and monopolies in their incipiency and before consummation." S. Rep. No. 63-698 at 1 (1913); *see also FTC v. Procter & Gamble Co.*, 386 U.S. 568, 577 (1967) ("[T]here is certainly no requirement that the anticompetitive power manifest itself in anticompetitive action before § 7 [of the Clayton Act] can be called into play. If the enforcement of § 7

turned on the existence of actual anticompetitive practices, the congressional policy of thwarting such practices in their incipiency would be frustrated.").

And even if, as Plaintiffs argue, the Sherman Act was based on the common law, which it is not, Congress enacted the Clayton Act in response to deficiencies in the Sherman Act and common law actions to rein in private monopolies. The Clayton Act was intended not "to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law," *Jarkesy*, 144 S. Ct. at 2137, but to address a far broader scope of conduct not previously reached by the Sherman Act or by the common law, *see* S. Rep. No. 63-698 at 1 (1913) (intending "to prohibit and make unlawful certain trade practices which, as a rule, singly and in themselves, are not covered by the [Sherman Act] . . . or other existing antitrust acts"). Thus, "Congress rejected, as inappropriate to the problem it sought to remedy, the application to § 7 cases of the standards for judging the legality of business combinations adopted by the courts in dealing with cases arising under the Sherman Act." *Brown Shoe Co.*, 370 U.S. at 317–18.

Finally, the equitable nature of the Commission's action demonstrates that it is not like any traditional legal claim. In *Jarkesy*, the Court emphasized that the Securities and Exchange Commission's ("SEC") action for civil penalties sought a remedy that at common law "could only be enforced in courts of law." *Id.* at 2136. Unlike the civil penalties in *Jarkesy*, injunctions were not "traditionally provided by law courts." *Id.* at 2135; *In re Abbott*, 117 F.4th at 749 ("It goes without saying that an injunction is an equitable remedy." (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982)).

The history Plaintiffs point to is not relevant to this case. Regardless of whether *Darcy v. Allen* or the Statute of Monopolies formed the basis for common law competition claims in the United States, neither the Clayton Act nor the FTC Act was based on those claims. Further, neither *Darcy v. Allen* nor the Statute of Monopolies establish that common law courts adjudicated claims challenging mergers. Rather, the actions against "monopolies" referenced by Plaintiffs were cases challenging royal grants of exclusive privileges. Steven G. Calabresi & Larissa C. Leibowitz, *Monopolies and the Constitution: A History of Crony Capitalism*, 36 HARVARD J.L. & PUB. POL. 983, 984 (2013). These common law claims bear no relation to this action, as the word "monopolies" referred to exclusive privileges granted by the British Crown or Parliament. *Id.*

The conduct targeted by these common law claims was the creation of royal monopolies—as compared to those created by custom or statute—not anticompetitive behavior. Therefore, the common law cases adjudicating the validity of exclusive privileges did not turn on concerns about competition, but rather the provenance of the exclusive privilege. Under the common law, exclusive privileges created by custom or statute were generally upheld, but exclusive privileges granted by the Crown were not. *See The Case of the City of London* (Wagoner's Case), (1610) 77 Eng. Rep. 658, 663 (K.B.). Thus, "[t]he common-law right was not to be free from trade restrictions, even exclusive trade privileges—it was only to be free from ones of illegitimate pedigree." Thomas B. Nachbar, *Monopoly, Mercantilism, and the Politics of Regulation*, 91 VA. L. REV. 1313, 1336 (2005).

14

The Statute of Monopolies confirms that these common law claims targeted the monarchy, not monopolistic practices. While the Statute banned royal monopolies and gave common law courts jurisdiction to hear cases involving such monopolies, it did not give common law courts jurisdiction to hear cases involving monopolies established by Parliament. *Id.* at 1353.

### B. Plaintiffs' Non-Delegation Claim is Foreclosed by Binding Precedent.

Plaintiffs' non-delegation claim is foreclosed by the Fifth Circuit's decision in *Illumina, Inc. v. FTC*, which rejected an identical challenge. 88 F.4th 1036, 1046 (5th Cir. 2023). As here, the petitioner in *Illumina* argued that Congress delegated the FTC "the power to decide whether to bring antitrust enforcement actions in an administrative proceeding . . . or to bring this same enforcement action in an Article III court . . . without providing any guidance for purposes of deciding *between* administrative proceedings and federal court." *Id.* (emphasis in original) (quotation omitted). The Fifth Circuit rejected that argument. First, the panel held that Section 13(b) proceedings are substantively different from administrative adjudications because of the varying available remedies. *Id.*[2] Second, the Fifth Circuit held that the requirement that an FTC proceeding be "in the interest of the public" sets forth an intelligible principle that satisfies the nondelegation doctrine. *Id.*

---

[2] As the Court explained, in Section 13(b) case, the Commission may only obtain injunctive relief. *See AMG Capital Mgmt., LLC v. FTC*, 593 U.S. 67 (2021). In consumer protection cases, however, the FTC may obtain monetary relief by filing an administrative proceeding, issuing a cease-and-desist order, and then filing a follow-up action for monetary relief under Section 19 of the FTC Act, 15 U.S.C. § 57b.

Plaintiffs "acknowledge" *Illumina's* holding, as they must. Pls.' Mot. 15. Plaintiffs nonetheless urge this Court to ignore the binding precedent in *Illumina*, and instead apply the analysis from the Fifth Circuit's earlier decision in *Jarkesy v. Securities & Exchange Commission*, 34 F.4th 446 (5th Cir. 2022). There is no basis to do so: *Illumina* is more recent and directly on point. In any event, *Jarkesy* is not inconsistent with *Illumina*. In *Jarkesy*, the Fifth Circuit considered a nondelegation challenge to the SEC's adjudication scheme. But, as the Supreme Court recently explained, at the time the Fifth Circuit decided *Jarkesy*, SEC's authority to seek monetary penalties in administrative proceedings was "coextensive with its authority to seek penalties in Federal court." *SEC v. Jarkesy*, 144 S.Ct. at 2126 (citation omitted). Together, the Fifth Circuit's decisions in *Jarkesy and Illumina* demonstrate that there is no available non-delegation claim against Commission proceedings simply because the remedies available through the administrative pathway are substantively different than those available in Article III court proceedings. *Illumina* further holds that the Commission's public interest standard sufficiently guides the agency's forum discretion for nondelegation purposes, in contrast to *Jarkesy*, where the Court found no intelligible principle to cabin the SEC's discretion. *Illumina*, 88 F.4th at 1046.

Because there is no conflict between the Fifth Circuit's holdings, Plaintiffs' argument to advance application of an "earlier-in time" rule is inapposite, and their nondelegation challenge is meritless.

16

## II.    PLAINTIFFS ARE NOT IRREPARABLY HARMED BY BEING SUBJECT TO ADMINISTRATIVE PROCEEDING.

Plaintiffs' motion should also be denied because they have shown no likelihood of irreparable harm absent an injunction.

First, Plaintiffs misplace their reliance on a statement in *Axon Enterprise*, 598 U.S. at 191, when they allege a "here-and-now injury" that cannot be remedied at the conclusion of the proceeding. Plaintiffs overread *Axon*, which stands only for the proposition that federal district courts have jurisdiction to hear certain structural constitutional challenges to the conduct of an ongoing administrative proceeding. *See* 598 U.S. at 180. *Axon* does not hold, as Plaintiffs wrongfully contend, that a plaintiff's structural challenges entail irreparable harm warranting preliminary relief. As the Tenth Circuit explained, "*Axon* did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief." *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 758 (10th Cir. 2024). It thus "does not help [Plaintiffs] establish irreparable harm" here. *Id.*; *see also id.* at 759 (noting that the plaintiff's alternative reading of *Axon* would convert that decision "into a broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised").

Second, Plaintiffs' assertion of irreparable harm in the form of costs incurred litigating the administrative proceedings is no stronger. The Supreme Court has held that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *FTC v. Standard Oil Co. of Calif.*, 449 U.S. 232, 244 (1980) (holding that expenses incurred defending an FTC proceeding did not amount to irreparable harm);

17

*see also Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974). Plaintiffs refer to these expenses as "compliance costs," and argue that they amount to irreparable harm because they are not recoverable through litigation. But the authority Plaintiffs rely on held that a plaintiff was likely to suffer irreparable harm from an "agency action that effectively halts sales of [the] company's primary revenue-generating product." *MCR Oil Tools, L.L.C. v. United States Dep't of Transportation*, No. 24-60230, 2024 WL 2954416, at *6 (5th Cir. June 12, 2024). Plaintiffs have made no such showing in this case.

## III.  THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST ENTRY OF A PRELIMINARY INJUNCTION.

The third and fourth injunctive factors, the balance of equities and the public interest, "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. These factors weigh against relief here because the public has a strong interest in enforcement of the Clayton Act, which protects the public from transactions which "may [] substantially [] lessen competition," 15 U.S.C. § 18, and the FTC Act, which protects the public from "unfair methods of competition," 15 U.S.C. § 45(a). Enjoining this administrative proceeding would frustrate those Congressional objectives, preventing the Commission from "effectuating statutes enacted by representatives of [the] people," and causing the United States to "suffer[] a form of irreparable injury" as a result. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted).

On the other hand, Plaintiffs have not shown that they will suffer any harm from proceeding with the scheduled administrative hearing, especially since they may seek

review of the outcome in federal court. 15 U.S.C. § 45(c). Accordingly, the balance of the equities and the public interest counsel against Plaintiffs' requested relief.

## CONCLUSION

The Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: December 13, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER HALL
Assistant Branch Director

*/s/ Rachael L. Westmoreland*
RACHAEL L. WESTMORELAND
Georgia Bar No. 539498 (admitted *pro hac vice*)
Trial Attorney
U.S Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20001
Tel: (202) 514-1280
E-mail: rachael.westmoreland@usdoj.gov

***Attorney-In-Charge for Defendants***

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Court Procedure 16(c), I certify that this motion contains less than 5,000

words.

*/s/ Rachael L. Westmoreland*
Rachael L. Westmoreland